## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER DOOLITTLE | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO: 16-cv- |
| AETNA LIFE INSURANCE COMPANY | : | |
| | : | |
| and | : | |
| | : | |
| BANK OF AMERICA CORPORATION | : | |
| Defendants. | : | |

## **COMPLAINT**

Plaintiff, Christopher Doolittle, hereby brings a civil action against Defendants, Aetna Life Insurance Company and Bank of America Corporation, based on the following:

### **The Parties**

1.      Plaintiff, Christopher Doolittle (Hereinafter "Plaintiff" or "Mr. Doolittle"), an adult individual, is a citizen of the State of New Jersey, having a residential address of 404 Lenape Trail, Brielle, NJ 08730.

2.      Defendant, Aetna Life Insurance Company (Hereinafter "Aetna"), is upon information and belief an insurance company licensed to do business in the Commonwealth of Pennsylvania. Upon information and belief, Aetna's principal mailing address for purposes of effectuating service of process is 151 Farmington Avenue, Hartford, CT 06156.

-1-

3.      Defendant, Bank of America Corporation (Hereinafter "Bank of America"), is upon information and belief a corporation licensed to do business in the Commonwealth of Pennsylvania.  Upon information and belief, Bank of America's mailing address for purposes of effectuating service of process is Bank of America Corporate Center, 100 North Tryon Street, Charlotte, NC 28255.

4.      This Court has jurisdiction pursuant to the Employment Retirement Income Security Act of 1974, as amended ("ERISA") 29 U.S.C. Section 1132(a).

5.      Venue is proper in this matter pursuant to 29 U.S.C. § 1132(e)(2). Title 28, United States Code, Section 1391(c), in that at all times material hereto, Defendants are licensed to transact business within the Commonwealth of Pennsylvania.

6.      Upon information and belief, the Long Term Disability Plan is an employee welfare benefit plan as defined by and governed under and pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001, et seq., as amended ("ERISA").

7.      At all times material hereto, Defendants acted by and through their agents, servants, and employees who acted within the scope of their authority from Defendants.

## Background Facts and Plaintiff's Disability

8.      At all times material hereto, Mr. Doolittle was an employee of Bank of America and, as such, was a participant in the Plan.

-2-

9.      At all times material hereto, Mr. Doolittle was employed by Bank of America as a financial advisor.

10.     As the record reflects, from December 3, 2013 to the present, Mr. Doolittle has been unable to engage in gainful employment secondary to the manifestation of symptoms related to irritable bowel syndrome, chronic diarrhea, giardiasis, E. Histolytica, and abdominal pain.

11.     In or about 2013, Mr. Doolittle began to experience severe stomach problems.  At the time, Mr. Doolittle was approximately 25 years old.

12.      As the record reflects on or about December 3, 2013, Mr. Doolittle's constant, unrelenting and debilitating symptoms became so severe that he was unable to perform his duties as a financial advisor or any other gainful employment.

13.     On or about October 28, 2014, Mr. Doolittle applied for long term disability benefits.

14.     Via letter dated December 12, 2014, Aetna/Bank of America denied Mr. Doolittle's application for long term disability benefits.

15.     Mr. Doolittle, through undersigned counsel, appealed Aetna/Bank of America's denial of long term disability benefits on April 8, 2015.

16.     Via letter dated July 16, 2015, Aetna/Bank of America partially overturned its previous decision to deny Mr. Doolittle long term disability benefits and awarded him benefits for the period from June 5, 2014 through May 15, 2015.

17.     Notwithstanding Defendants' decision to terminate Mr. Doolittle's benefits, the records provided to Defendants conclusively establish Mr. Doolittle's ongoing total disability status.

18.     For the reasons set forth hereinafter, Aetna/Bank of America's decision to terminate Mr. Doolittle's full disability benefits beyond May 15, 2015 was unreasonable, arbitrary and capricious, and inapposite to the medical documentation submitted in support of his claim.

## Plaintiff's Application for Long Term Disability

19.     The allegations in paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

20.     By December 2013, Mr. Doolittle's stomach symptoms became so severe that he was no longer capable of performing the duties required of him as a financial advisor.

21.     At the time of his disability in December 2013, at the age of 25, Mr. Doolittle suffered from severe symptoms secondary to an aggregation of irritable bowel syndrome, chronic diarrhea, giardiasis, E. Histolytica, and abdominal pain.

22.     During this time, Mr. Doolittle initially sought treatment with Allergy and Immunology specialist Dr. Stephen Wangen.  (See Representative Sample of Dr. Wangen's records attached as Exhibit "A").

23.     Thereafter, in March 2014, Mr. Doolittle began treating with Gastroenterologist, Dr. Bruce Langner. In an effort to diagnose Mr. Doolittle's excruciating and unrelenting

-4-

symptoms, Dr. Langner referred Mr. Doolittle for extensive analytic testing. (See Representative Sample of Dr. Langner's Office Notes and Diagnostic Test Results dated 3/17/2014 through 11/5/2014, collectively attached as Exhibit "B").

24.     On December 12, 2014, Aetna/Bank of America informed Mr. Doolittle that his application for long term disability benefits had been denied. (See Aetna Denial Letter dated 12/12/2014, attached as Exhibit "C").

## Defendants' Denial of Plaintiff's Long Term Disability Claim

25.     The allegations in paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

26.     Via letter dated December 12, 2014, Aetna/Bank of America informed Mr. Doolittle that his claim for long term disability benefits was denied. Aetna/Bank of America made the decision to deny Mr. Doolittle's benefits stating, "…*there is insufficient clinical information to support [Mr. Doolittle's] inability to perform [his] occupation…*" (See Exhibit "C").

27.     Aetna/Bank of America informed Mr. Doolittle that *"[Mr. Doolittle's] providers did not provide substantiated physical examination findings or test results that would preclude [him] from performing the essential job duties of [his] own occupation…"* (See Exhibit "C").

28.     Defendants' generic, boilerplate language completely lacked any genuine basis to deny Mr. Doolittle's claim.

-5-

29.     Via letter dated January 29, 2015, Aetna/Bank of America informed Mr. Doolittle

that additional documentation from Dr. Langner including a Capsule Endoscopy Report,

laboratory results and a pathology report were reviewed and the decision to deny Mr. Doolittle's

benefits remained unchanged.  (See Aetna/Bank of America's Letter dated 1/29/2015, attached

as Exhibit "D").

30.     In denying the claim, the Defendants unreasonably disregarded the abundant

medical documentation Mr. Doolittle provided including multiple diagnostic and clinical test

results which illustrated his inability to perform any of his job functions as a financial advisor

during this time.

### Plaintiff's Appeal for Long Term Disability Benefits

31.     The allegations in paragraphs 1 through 29 are incorporated by reference as if

fully set forth herein.

32.     On April 18, 2015, Mr. Doolittle, through counsel, appealed Aetna's/Bank of

America's decision to deny his long term disability benefits.  (See Mr. Doolittle's Appeal Letter

dated 4/18/2015, attached as Exhibit "E").

33.     As part of his appeal, Mr. Doolittle submitted a personal statement in which he

detailed the debilitating daily manifestations secondary to his irritable bowel syndrome, acute

pancreatitis, pancreas divisum, protein calorie malnutrition, aerophagia and celiac disease/sprue:

> *"During 2013 I began having severe intestinal issues. Being a hardworking, driven individual I was pushing myself to work every day.  As time progressed my symptoms were worsening quickly.  This began to significantly impact my ability to achieve required goals at work, as well as being able to make my required 40 calls per day.*
>
> *On a daily basis, I was continuing to have a wide variety of symptoms; chronic urgent diarrhea, debilitating stomach cramps making it difficult to stand, 40 pound weight loss in 1 year, nausea, vomiting, extreme fatigue, dizziness, headaches, as well severe chest pains causing difficulty breathing.  On average days I have diarrhea at least 7-10 times, and on worse days (which was very often) it would be approximately 15-25 times.  This along with my other symptoms made it extremely difficult to execute daily tasks at work..."*

(See Mr. Doolittle's Personal Statement dated 8/8/2014, attached as Exhibit "F").

34.     In addition, on appeal, Mr. Doolittle supplied Aetna/Bank of America with an office note from gastroenterologist, Dr. Simon Lichtiger.  Of particular importance is the fact that Dr. Lichtiger noted Mr. Doolittle's weight to be 133 pounds whereas his "usual" weight was 173 pounds and stated *"[Mr. Doolittle] has lost 45 pounds over past three months..."* (See Dr. Lichtiger's Office Note dated 3/7/2014, attached as Exhibit "G").

35.     To further substantiate his disability, Mr. Doolittle provided Aetna/Bank of America with endoscopy reports from February 2, 2015. The endoscopy report showed, *"a deformity was found in the gastric antrum...the pancreatic duct was thin, measuring less than 2 mm throughout. There was a suggestion of at least incomplete pancreatic divisum..."*.  (See Endoscopy Reports dated 2/2/2015, attached as Exhibit "H").

36.     Mr. Doolittle supplied additional medical records including another endoscopy report and medical records from gastroenterologist, Dr. Benjamin Lebwohl. In particular Dr. Lebwohl noted, "*Current symptoms include diarrhea, abdominal pain, belching, nausea, and dizziness...at present he describes constant pain in his mid-abdomen (periumbilical) that varies from sharp to dull to burning. Nausea, sometimes with dry heaves.  No vomiting.  Burning sensation is in his abdomen and anus...he has had 3 loose BMs today so far. He averages 10-15/day and recently they have been black in color...*" (See Representative Sample of Medical Records dated 11/24/2014 through 12/3/2015, collectively attached as Exhibit "I").

37.     Also made part of the appeal were medical records, disability notes and diagnostic tests from Dr. Langner.  In a letter dated August 7, 2014, Dr. Langner stated, "*I began treating Mr. Doolittle on March 10, 2014.  Mr. Doolittle presented with symptoms of abdominal pain, chronic diarrhea, significant weight loss, nausea, vomiting, esophageal reflux, and heartburn. Mr. Doolittle's symptoms made it impossible for him to work because of the constant need for the bathroom.*" (See Representative Sample of Records dated 3/2014 through 11/2014, collectively attached as Exhibit "J").

38.     Finally, included with the appeal documentation was a narrative office note from Dr. Stephen Kaufman, who conducted an independent medical examination of Mr. Doolittle on March 27, 2015.  In his assessment, Dr. Kaufman concluded, "*symptoms are intractable on current management and clearly disabling making it impossible to perform the material and substantial duties of his pre disability job and with marked limitations in performance status*

-8-

*despite willingness to return to gainful employment manifesting with diarrhea and nausea.*"
(See Dr. Kaufman's Narrative Office Note dated 3/27/2015, attached as Exhibit "K").

39.     Under separate cover, but also made part of his appeal documentation, Mr. Doolittle submitted patient discharge instructions for a stent placement surgery Mr. Doolittle had in May 2015 which was performed by gastroenterologist, Dr. Tamas Gonda.  (See Discharge Paperwork dated 5/3/2015, attached as Exhibit "L").

40.     The records provided to Defendants conclusively show Mr. Doolittle's ongoing and total disability status secondary to an aggregation of symptoms related to irritable bowel syndrome, chronic diarrhea, giardiasis, E. Histolytica, and abdominal pain.

41.     Despite the multitude of medical documentation provided, via letter dated July 16, 2015, Aetna/Bank of America partially denied Mr. Doolittle's appeal for long term disability benefits.  (See Exhibit "M").

**COUNT I - DEFENDANTS' VIOLATION OF ERISA AND**
**WRONGFUL TERMINATION OF DISABILITY BENEFITS**
**UNDER 29 USC SECTION 1132(a)(1)(A) and (B)**

42.     The allegations in paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

43.     Via letter dated July 16, 2015 Mr. Doolittle learned that his appeal for long term disability benefits was partially denied by Aetna/Bank of America. Mr. Doolittle was awarded long term disability benefits from June 3, 2014 through May 15, 2015. (See Aetna's Denial Letter dated 7/16/2015, attached as Exhibit "M").

-9-

44.     Defendants terminated Mr. Doolittle's benefits beyond May 15, 2015 stating,

"...there was a lack of documentation that Mr. Doolittle had continued impairment that

prevented him from performing the material duties of his own occupation as of May 16, 2015,

and after..." (See Exhibit "M").

45.     Aetna/Bank of America based their decision to terminate Mr. Doolittle's long

term disability benefits, in large part, on the paper review of its hired physician.

46.     Essentially, Aetna/Bank of America disregarded the medical evidence provided by

Mr. Doolittle's treating providers in determining that Mr. Doolittle was not entitled to benefits

beyond May 15, 2015.

47.     Defendants denied Mr. Doolittle's disability benefits solely on a paper review

conducted by their hired physician without having Mr. Doolittle undergo an independent

medical examination.

48.     Defendants denied Mr. Doolittle's appeal, focusing on the record review of their

hired physician as opposed to the assessments, statements, opinions and conclusions of Mr.

Doolittle's treating providers.

49.     As reflected in the records herein and provided to Defendants, Mr. Doolittle was

disabled from performing his pre-disability job at all times beyond December 3, 2013, and at all

times material hereto Mr. Doolittle has provided to the Defendants medical and other ancillary

evidence to establish his disability under the Plan and, as a result, he is entitled to long term

disability under the Plan.

-10-

50.    Under any ERISA standard of review, Defendants' review and decision to terminate Mr. Doolittle's disability benefits beyond May 15, 2015 were wrong and/or arbitrary and capricious, in violation of ERISA, and in violation and contrary to standards and provisions of the applicable Plan, including but not limited to the reasons set forth above.

51.    Defendants' review, claim handling, and decision to terminate Mr. Doolittle's disability benefits were arbitrary and capricious inasmuch as they were not reasonable and were not supported by the evidence of record and, in addition to being biased, self-serving and otherwise tainted by both substantive and procedural conflict of interest, they were also the product of a complete disregard of and egregious violations as to ERISA claim regulations, all of which constitutes "extraordinary circumstances" that warrant and demand a substantive remedy.

52.    Defendants completely failed to provide a "full and fair review" and, as above, the scope and extent of the violations of ERISA's claim regulations were so significant and egregious and clearly so affected the claim decision (and the integrity of the claim decision) that a substantive remedy in the form of an award of long term disability benefits is warranted.

53.    The decision to deny Mr. Doolittle long term disability benefits resulted in a monetary savings to Defendants and, thus, was tainted by a conflict of interest.

54.    As a direct result of Defendants' violations of ERISA and the wrongful termination of benefits, Mr. Doolittle has been denied payment of long term disability benefits from May 2015 onward, which payments plus interest he is entitled to recover and seeks herein.

-11-

55.     As a direct result of Defendants' violations of ERISA and wrongful termination of benefits, Mr. Doolittle has been caused to retain counsel and incur attorneys' fees and incur other costs and expenses which he is entitled to recover and seeks recovery of these attorneys' fees, costs and expenses herein.

56.     Because Defendants were to have provided this employee benefit plan which is covered by ERISA, Defendants are obligated to abide by the terms and conditions as stated in the policy of coverage.

57.     Under ERISA, Defendants are bound to honor their own contract.

58.     Defendants have arbitrarily and capriciously failed and refused to abide by the terms and conditions as stated in their own policy.

**WHEREFORE**, Plaintiff Christopher Doolittle herein requests that judgment be entered in his favor and against Defendants, Aetna and Bank of America, and for this Court to award him full and complete payment of his long term disability benefits from May 15, 2015 onward, reasonable attorneys' fees, costs, and expenses as permitted under ERISA, interest and any other equitable relief that this Court deems appropriate.

### COUNT II – MEDICAL PREMIUMS INCURRED AS A RESULT OF DEFENDANTS' WRONGFUL DECISION TO TERMINATE BENEFITS

59.     The allegations in paragraphs 1 through 58 are incorporated by reference as if fully set forth herein.

60.     As part of his employment with Bank of America, Mr. Doolittle participated in an Aetna sponsored medical insurance plan.

61.     When Mr. Doolittle's application for long term disability benefits was denied, Mr. Doolittle was also denied access to medical insurance, to which he was entitled, under an Aetna sponsored medical insurance plan.

62.     Mr. Doolittle has incurred $7,737.96 in out-of-pocket medical insurance expenses to date; including prescription premiums of $110.56 per month and COBRA premiums of $534.27 per month from January 1, 2015 through December 31, 2015 and ongoing. Mr. Doolittle has incurred these expenses as a direct result of being denied disability benefits. (See Mr. Doolittle's Premium payments from 1/1/2015 through 12/31/2015, collectively attached as Exhibit "N").

63.     Because Defendants wrongfully denied Mr. Doolittle's long term disability benefits, Mr. Doolittle's medical coverage was also wrongfully terminated.

64.     As a result, Mr. Doolittle has wrongfully incurred substantial debt for his medical premium expenses.

65.     As a direct result of Defendants' violations of ERISA and the wrongful termination of long term disability benefits, Mr. Doolittle has been denied proper healthcare coverage and incurred substantial debt for same in the amount of $7,737.96, which payments plus interest he is entitled to recover and seeks herein.

-13-

**WHEREFORE**, Plaintiff Christopher Doolittle herein requests that judgment be entered in his favor and against Defendants, Aetna and Bank of America, and for this Court to award him full and complete payment of his long term disability benefits from May 2015 onward, reimbursement for medical expenses, reasonable attorneys' fees, costs, and expenses as permitted under ERISA, interest and any other equitable relief that this Court deems appropriate.

Respectfully Submitted,

ROSEN, MOSS, SNYDER & BLEEFELD, LLP

COURTNEY CROWLEY, ESQUIRE
MARC SNYDER, ESQUIRE
Attorneys for Plaintiff,
Christopher Doolittle

-14-